**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SEAN ALAN O'BRIEN, | No. 14-15753 |
| Petitioner - Appellant, | D.C. No. 2:10-cv-02472-MCE-CKD |
| v. | |
| LELAND MCEWEN, | AMENDED MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted July 6, 2015
San Francisco, California

Before: GRABER and WATFORD, Circuit Judges, and FRIEDMAN,[**] District Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Paul L. Friedman, District Judge for the U.S. District Court for the District of Columbia, sitting by designation.

1.  The state court's rejection of Sean O'Brien's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), was objectively reasonable.  No evidence suggested that Dr. Rollins was under the influence of drugs when he conducted the autopsy or testified at trial.  The state court reasonably determined that impeaching Dr. Rollins based on the conduct underlying his drug-related offenses would not have undermined the jury's reliance on his testimony.

2.  The state court reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting O'Brien's allegation that his trial attorney's failure to request a continuance constituted ineffective assistance of counsel.  Counsel explained why he chose to proceed with the trial even after receiving belated notice that Wellman had changed his story—he believed that impeaching Wellman's testimony would be the best trial strategy, that he had an ample basis for doing so already, and that further delay would not be helpful.  The state court's determination that this decision was professionally competent was not objectively unreasonable, and therefore merits deference under AEDPA.

3.  The state court's application of *Strickland* to O'Brien's claim that trial counsel rendered deficient performance in presenting his defense was objectively unreasonable.  Because the state court denied O'Brien's request for an evidentiary hearing and did not issue an order to show cause, the state court's task under

*Strickland* was to decide whether the allegations in O'Brien's habeas petition, if accepted as true, established a prima facie case of ineffective assistance. *See Cannedy v. Adams*, 706 F.3d 1148, 1160 (9th Cir. 2013).

The state court rejected O'Brien's ineffective assistance claim on the ground that, even if counsel's performance in presenting O'Brien's defense was deficient, O'Brien failed to establish prejudice under *Strickland*. To establish prejudice, O'Brien needed to show that, if counsel had performed in the manner that O'Brien argues he should have, there is a reasonable probability that the result of the trial would have been different. *See Strickland*, 466 U.S. at 694. Stated differently, O'Brien needed to show that, but for counsel's allegedly deficient performance, there is a reasonable probability that at least one juror would have credited the additional evidence and harbored a reasonable doubt about his guilt. *See Cannedy*, 706 F.3d at 1166. To make that determination, the court had to "compare the evidence that actually was presented to the jury with that which could have been presented had counsel acted appropriately." *Id.* at 1163 (quotation marks omitted).

O'Brien's state habeas petition alleged facts that, if accepted as true, showed that trial counsel failed to introduce available evidence that would have significantly strengthened O'Brien's defense. Indeed, if believed, the additional evidence would have rendered it virtually impossible for O'Brien to have

committed the murder with which he was charged, given the location of the murder and the State's theory as to when it took place. The State's theory was that the murder occurred between 10:30 a.m. and 11:30 a.m. O'Brien had a solid alibi, which the State did not contest, establishing that he was at home throughout the period both before and after that one-hour window. To take one example of the additional evidence that could have been introduced, O'Brien's state habeas petition alleged that trial counsel could have introduced evidence establishing that O'Brien made and received telephone calls at home at 10:49 a.m. and 11:14 a.m. on the day of the murder, leaving only a 25-minute "gap" in his alibi. Other evidence established that the round-trip drive between O'Brien's home and the location of the murder took at least 36 minutes, which could well have caused jurors to doubt whether O'Brien participated in the crime. That is particularly true here because there was no physical evidence directly tying O'Brien to the murder and, according to the allegations in O'Brien's habeas petition, defense counsel could have introduced evidence undermining the credibility of the testimony offered by the State's key witnesses. In light of these and the other allegations made in O'Brien's state habeas petition, no fair-minded jurist could accept all of the allegations as true and still conclude that there was no reasonable probability the result of the trial would have been different. As a result, the state court's

decision denying O'Brien's ineffective assistance of counsel claim is not entitled to deference under 28 U.S.C. § 2254(d).

Because the state court did not address deficient performance in connection with these allegations, our review of that prong is de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). Crediting O'Brien's allegations, trial counsel failed to present critical alibi evidence that might have raised a reasonable doubt regarding whether O'Brien could possibly have participated in the crime. "Competent counsel would not have failed" to put such evidence before the jury. *See Cannedy*, 706 F.3d at 1166.

Because the allegations in O'Brien's federal habeas petition establish a colorable claim for relief, and because the allegations are not inherently incredible or refuted by the existing state court record, the district court could not reject his ineffective assistance of counsel claim without holding an evidentiary hearing. *See Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005); *cf. Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012). We therefore reverse the district court's denial of O'Brien's ineffective assistance of counsel claim to the extent the claim is predicated on alleged deficiencies in trial counsel's presentation of O'Brien's defense, and remand with instructions to hold an evidentiary hearing with respect to the allegations referenced in Claim 6, summary paragraphs (c), (d), (e), (f), (h),

(i), (k), and (m) of O'Brien's federal habeas petition.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

Costs on appeal are awarded to Appellant.

O'Brien v. McEwen, No. 14-15753

GRABER, Circuit Judge, dissenting:

I agree with Paragraphs 1 and 2 of the disposition but respectfully dissent from Paragraph 3.  I would affirm the judgment in its entirety.

In my view, the state courts reasonably concluded that the additional alibi evidence would not likely have altered the verdict, even if the lawyer had presented it to the jury.  See Strickland v. Washington, 466 U.S. 668, 693 (1984) (holding that prejudice must be shown to grant relief on a claim of ineffective assistance of counsel).  The state court's findings of fact were not unreasonable.  See Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003) (stating standard).  The state court pointed to the following pieces of evidence, among others, which demonstrated O'Brien's guilt overwhelmingly:

   • Co-perpetrator Wellman testified and identified O'Brien as the shooter.

   • Co-perpetrator Dickson testified and he, too, identified O'Brien as the shooter.

   • O'Brien's friend Petty testified that he had loaned O'Brien his .20 gauge shotgun on the morning of the murder, which O'Brien returned to him the same day, after the time of the murder, along with a box of ammunition missing one shell.  According to the shopkeeper, a man fitting O'Brien's description was present, along with men fitting the descriptions of his two co-perpetrators, when

that box of ammunition was purchased on the morning of the murder.  The co-perpetrators confirmed that it was the three of them who acquired the ammunition. The box of shells, from which one was missing, was consistent with the type that killed Smelser.

• O'Brien told his friend Michaud on the morning of the murder that he was heading out to get marijuana, money, and dirt bikes.  Later, he told her that the murder was "what went wrong" when he went to obtain the drugs and money.

• O'Brien told his friend Sargent that he had killed someone for a "wad of cash" that he showed Sargent a couple of days after the murder.  O'Brien told Sargent that the cash totaled about $2,400.

• Late in the morning on the day of the murder, O'Brien talked to his friend Anschultz, whom he told that he had $2,500 with which he wanted to buy marijuana.  When Anschultz asked where he had obtained the money, O'Brien said he did not want to talk about it on the phone.

• Similarly, O'Brien told his friend LaCerte on the day of the murder that he had "a couple [of] grand" with which he wanted to buy marijuana.

• Other testimony showed that O'Brien had been to Smelser's house before and knew that marijuana was sold there.

Moreover, the defense presented—and the jury rejected—similar alibi

evidence.

For those reasons, I would affirm.